O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>MARIBEL RINCON,<br><br>Defendant. | CASE NO.: SACR 11-00242-JLS<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL OR, IN THE ALTERNATIVE, FOR NEW TRIAL** |

Before the Court is defendant Maribel Rincon's Motion for Judgment of Acquittal pursuant to Federal Rule of Criminal Procedure 29 or, in the Alternative, for New Trial, pursuant to Federal Rule of Criminal Procedure 33. (Doc. 68.) The Government filed an opposition (Doc. 74) but Defendant did not reply. After reviewing the papers and supporting documentation submitted by the parties, and having taken the matter under submission, Defendant's Motion is DENIED.

1

## I. BACKGROUND

### A. The Charges

Maribel Rincon was charged with four counts of making false, fictitious or fraudulent claims against the United States in violation of 18 U.S.C. § 287 ("section 287").[1] (*See* SACR 11-242 Indictment, Doc. 1.)  In particular, Defendant was charged with causing four false federal individual tax returns to be filed with the Internal Revenue Service ("IRS"), which collectively claimed more than $1,500,000 in false tax refunds.  Count One charged a false tax return filed on behalf of Nelson Diaz which sought a refund of $741,584; Count Two charged a false tax return filed on behalf of Jose Jaime Guzman which sought a refund of $192,351; Count Three charged a false tax return filed on behalf of Sandra Provencio and Vincent Provencio which sought a refund of $333,285; and Count Four charged a false tax return filed on behalf of Christine Palacios which sought a refund of $397,641.  *See id.*

The crime of making false statements to the United States has three elements.  First, the defendant presented, or caused to be presented, a claim against the United States or an agency thereof.  Second, the claim was false, fictitious or fraudulent.  Third, the defendant knew that the claim was false, fictitious or fraudulent.  (*See* Trial Transcript ("Tr.") at 304-305, Doc. 72.)  The third element,

---

[1]  Section 287 provides as follows: "Whoever makes or presents to any person or officer in the civil, military, or naval service of the United States, or to any department or agency thereof, any claim upon or against the United States, or any department or agency thereof, knowing such claim to be false, fictitious, or fraudulent, shall be imprisoned not more than five years and shall be subject to a fine in the amount provided in this title."

Defendant's knowledge of the falsity, was the central focus of the trial. The jury was charged as follows with regard to this third element:

> A statement or representation is false or fictitious if untrue when made and then known to be untrue by the person making it or causing it to be made. A statement or representation is fraudulent if known to be untrue and made or caused to be made with the intent to deceive the Government agency to whom submitted.

*Id.* at 305.

The Court found that there was no evidence that Defendant presented, or caused to be presented, the third tax return. *See id.* at 348-351. Count Three was therefore dismissed before the jury began deliberating. *See id.* at 350-351. The jury found Defendant guilty of Counts One, Two and Four. *See id.* at 366. Defendant has since moved for judgment of acquittal on the ground of insufficient evidence, arguing that "the required level of knowledge was never shown." Defendant's Memorandum of Points and Authorities at 1 ("Def. Mem."). Defendant has also moved for a new trial on the same ground and in the interest of justice. *See id.* at 7-8.

### B. The Government's Evidence

The fraudulent tax scheme in which Defendant participated involved the false reporting of Original Issue Discount ("OID") income by individual taxpayers who would then claim fraudulent tax refunds based on false amounts of income tax withheld (hereinafter, the "1099-OID Program" or "OID scheme"). Defendant was a promoter of the fraudulent 1099-OID Program. *See* Tr. at 177. Defendant had a business in Palmdale, California, named LEBIRAM Investments. *See id.* at 190. Defendant charged customers $3,000 to sign up for the 1099-OID Program. *See id.* at 153. Once a false OID-based tax return was prepared by the tax preparers, Defendant would meet with the customer to have it signed and filed with the IRS.

*See id.* at 178-179. Witnesses Cristina Palacios and Jose Guzman testified that Defendant provided them with the false OID-based tax returns they filed with the IRS, telling them where to sign the returns. *See id.* at 155, 271.

The Government called five witnesses in its case-in-chief: (1) David Kropp, an IRS employee; (2) Jose J. Guzman, one of Defendant's customers who filed the false tax return charged in Count Two: (3) IRS Special Agent Leonard Ramos, who had interviewed Defendant; (4) Juan Alfredo Borja, a tax preparer; and (5) Cristina Palacio, another customer who filed the false tax return charged in Count Four.

There was a substantial amount of circumstantial evidence that Defendant actually knew, or was deliberately ignorant of, the fraudulent nature of the 1099-OID Program. Such evidence includes the following:

- Defendant told Agent Ramos that the claims made at the OID presentation she attended seemed "unbelievable" to her. Tr. at 176.

- Defendant held one OID presentation at a hotel and approximately eight presentations at her office. *See id.* at 185-186.

- Defendant only held one OID presentation at a hotel because "she had doubts in her mind about the legitimacy of the 1099-OID program." *Id.* at 193.

- Defendant's doubt was created, in part, by the IRS publication, "Problem Alerts, Form 1099-OID Fraud," which alerted the public at large that the 1099-OID scheme was fraudulent. *See id.* at 194-195.

- Defendant admitted that she read the IRS 1099-OID Fraud Alert over and over. *See id.* at 195.

- Defendant was aware that the IRS had sent "frivolous filing letters" to certain customers. *Id.* at 205-206.[2]

- Defendant believed that the IRS was sending frivolous filing letters as a "scare tactic" to prevent taxpayers from filing fraudulent 1099-OID returns. *Id.* at 207.

- Defendant was aware that the IRS had raided the office of Mr. De La Fuente, a co-conspirator and tax return preparer, and executed a search warrant. Defendant continued to promote the OID scheme even after learning about the raid. *See id.* at 210-211.

- De La Fuente and Osman Norales, another co-conspirator and tax return preparer, instructed Defendant to shred all documents relating to the OID program in her office before the IRS could seize them. *See id.* at 214.

---

[2] A frivolous filing letter is sent by the IRS to an individual taxpayer notifying him or her that the tax return filed is frivolous and has no basis in law. The taxpayer is then given thirty days in which to file a corrected return or face a $5,000 penalty. *See id.* at 206.

- Defendant was aware that some of her customers had been subpoenaed to testify before the grand jury. *See id.* at 215.

- Defendant told Cristina Palacios to tell the grand jury that she did not know Defendant when she testified. *See id.* at 279.

- The Provincios' accountant, Juan Borja, told Defendant that the 1099-OID Program was illegal and fraudulent. *See id.* at 218, 257, 261

In addition to the circumstantial evidence summarized above, there was direct evidence that Defendant knew that Guzman's tax return contained at least one false statement. Guzman testified that Defendant wrote "Self-Prepared" right under the signature line on his return. *See id.* at 156, 163. Guzman further testified that Defendant told him he would be receiving a refund of $192,000. *See id.* at 158.[3] Defendant unequivocally knew that Guzman did not prepare his own tax return. *See id.* at 156, 162, 178. Defendant told Guzman that she wrote "Self-Prepared" on his return so that the return would be "valid." *Id.* at 156. *See also id.* at 204 (Defendant told Agent Ramos that if someone other than the taxpayer signed Guzman's return, the return would be invalidated).

---

[3] The Government argues that "[t]he ridiculous numbers claimed on the returns themselves are sufficient to establish knowledge." Government's Opposition to Defendant's Motion for Judgment of Acquittal and Motion for New Trial ("Gov't Opp.") at 15. *See also id.* at 9-10 ("[T]he jury could conclude from the numbers on the tax returns themselves – claiming hundreds of thousands of dollars in income and taxes paid by people with modest income – that defendant knew that the amounts being claimed were false, particularly when looking at the modest income of the customers.").

## II. LEGAL STANDARDS

### A. Federal Rule of Criminal Procedure 29

Federal Rule of Criminal Procedure 29 ("Rule 29) permits a court, upon motion by a defendant, to set aside a guilty verdict and "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In considering a Rule 29 motion, the relevant question is "whether 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Nevils*, 598 F.3d 1158, 1163-64 (9th Cir. 2010) (en banc) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, (1979)). *See also McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).

The Ninth Circuit applies a two-step inquiry when a conviction is challenged based on the sufficiency of the evidence. "First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution." *Nevils*, 598 F.3d at 1164. "Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow '*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt.'" *Id.* (quoting *Jackson*, 443 U.S. at 319) (emphasis and alteration in original). "At this second step, however, a reviewing court may not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' only whether '*any*' rational trier of fact could have made that finding." *Id.* (quoting *Jackson*, 443 U.S. at 318-19) (citation omitted, emphasis in original).

The court must bear in mind that it is the exclusive function of the jury "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.

Moreover, "[c]onflicting evidence is to be resolved in favor of the jury verdict, and 'all reasonable inferences are to be drawn in favor of the government.'" *United States v. Corona-Verbera*, 509 F.3d 1105, 1117 (9th Cir. 2007) (quoting *United States v. Alvarez–Valenzuela*, 231 F.3d 1198, 1201-02 (9th Cir. 2000)).

### B. Federal Rule of Criminal Procedure 33

Under Federal Rule of Criminal Procedure 33 ("Rule 33"), a new trial may be granted upon a defendant's motion when the "interest of justice so requires." Fed. R. Crim. P. 33(a). For example, a new trial is warranted where the evidence weighs heavily against the verdict. *See United States v. Alston*, 974 F.2d 1206, 1211-12 (9th Cir. 1992). As explained by the Ninth Circuit, "'[a] district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal.' The court is not obliged to view the evidence in the light most favorable to the verdict, and it is free to weigh the evidence and evaluate for itself the credibility of the witnesses." *United States v. Kellington*, 217 F.3d 1084, 1097 (9th Cir. 2000) (alteration in original) (quoting *Alston*, 974 F.2d at 1211).

The decision whether to grant a motion for a new trial lies "'within the sound discretion of the district court.'" *See id.* (quoting *United States v. Steel*, 759 F.2d 706, 713 (9th Cir. 1985)). However, the court's discretion is not unconstrained. The court may only grant a new trial if it finds that "the evidence preponderates sufficiently heavily against the verdict that a serious miscarriage of justice may have occurred." *Id.* (quotation marks and citation omitted)

## III. DISCUSSION

### A. Judgment of Acquittal

The Government argues that there is "overwhelming evidence" that Defendant knew that the tax returns in issue were false, fictitious or fraudulent. Gov't Opp. at 9. The Government bases this conclusion on the vast amount of

8

circumstantial evidence establishing Defendant's knowledge that the 1099-OID Program was fraudulent. It is reasonable to infer that knowledge of the fraudulent OID scheme translates into knowledge that the returns produced by that scheme are false or fraudulent. Moreover, Defendant was an active participant in most aspects of the OID scheme. Defendant solicited the customers who filed the tax returns charged in the Indictment. Out of the $3,000 paid by each customer, she remitted $2,000 to the scheme's organizers and kept $1,000 for herself. Defendant brought her customers' tax information to the persons who prepared the returns. Defendant then delivered the completed returns back to the customers and instructed them where to sign. Finally, the tax returns themselves reflect the exact fraudulent nature of the 1099-OID Program by reporting grossly inflated amounts of taxable interest income and taxes withheld. *See, e.g.*, Gov't Exs. 1-3. Thus, under these circumstances, including Defendant's knowledge of the fraudulent nature of the 1099-OID Program, it was reasonable for the jury to infer that Defendant knew that the tax returns produced by that very scheme were themselves false or fraudulent.

At trial, direct evidence was presented showing Defendant's actual knowledge of the falsity of the return filed by witness Jose J. Guzman. Guzman testified that Defendant wrote "Self-Prepared" under the signature line on his return. It is indisputable that Defendant knew Guzman did not prepare his own return as she was the one who brought him his return and directed him to file it with the IRS. Thus, Defendant had actual knowledge that Guzman's return contained at least one false statement. Defendant tries to justify this falsehood on the ground that she believed that not putting "Self-Prepared" on the return would make the return invalid. *See* Def. Mem. at 1. This rationalization is belied by the fact that Defendant's own 2006 Individual Income Tax Return was signed by a "Paid Preparer" and was not invalid. *See* Tr. at 204-205. Defendant further argues

that such belief was consistent with her statement to Agent Ramos that the IRS is owned by England. *See* Def. Mem. at 1. Defendant's subjective beliefs about the validity of "Self-Prepared" returns and the ownership of the IRS are irrelevant to whether she had actual knowledge of the falsity of a tax return she caused to be filed with the IRS.

Defendant also told Guzman that he would be receiving a refund of $192,000. This establishes that Defendant did more than shuffle papers; she actually looked at the numbers in Guzman's return. The absolute dollar amount of Guzman's refund, in and of itself, is sufficient to establish Defendant's knowledge of the falsity of that return. Similarly, the dollar figures in the other two returns establish, albeit circumstantially, Defendant's knowledge of the falsity of those returns. For example, the 2008 tax return filed by Nelson Diaz shows taxable interest of $1,174,085. *See* Government Exhibit 1. The only other income reported is business income in the amount of $3,458. *See id.* Similarly, the Provencio's 2009 tax return lists taxable interest of $492,158 and wages of $92,061. *See* Government Exhibit 3. Such disproportionate figures are, in and of themselves, evidence of the falsity of the returns. Accordingly, the Government has proven all three elements of the crimes charged in Counts One, Two and Four of the Indictment  Because there was sufficient evidence to support Defendant's conviction on these charges, her Rule 29 motion for a judgment of acquittal is DENIED.

### B. New Trial

#### 1. Insufficiency of the Evidence

For the same reasons that Defendant's insufficiency of the evidence argument fails for purposes of Rule 29, it also fails within the context of Rule 33. But Defendant makes another argument in support of her request for a new trial. Defendant argues that a new trial should be granted because no rational trier of fact

10

could have found the requisite elements of an "agreement" or the "knowing and willful" execution of a "scheme or artifice." Def. Mem. at 7. But section 287 does not require an agreement or the knowing or willful execution of a scheme or artifice. Section 287 merely requires that Defendant knew that the false claims she caused to be made were false, fictitious or fraudulent. Defendant's supplemental argument is therefore rejected.

### 2. Denial of Continuance

On October 11, 2013, Defendant filed an ex parte application to continue the trial date, which was re-scheduled to January 21, 2014. (Doc. 31). After hearing defense counsel's arguments, Defendant's application for a continuance was denied. (Doc. 37.) Defendant now argues that the denial of a continuance hindered her counsel's ability to effectively cross-examine the witnesses that testified about the "Self-Prepared" issue. *See* Def. Mem. at 7-8 ("It makes no sense that accountants would go through the effort of completing a tax return, and then leave one blank simple line for an uncomprehending underlying [sic] to complete."). Defendant's argument in this regard is rejected for the following reasons.

Defense counsel was appointed to represent Defendant in October 2011. The discovery in this case was provided to defense counsel in April 2012, more than a year and a half before trial. In fact, the Government made Guzman's grand jury testimony available to defense counsel in early 2012. As in the trial, Guzman testified before the grand jury that Defendant handwrote "self-prepared" on his tax return. Given the ample time defense counsel had to prepare for trial, there was no valid basis for Defendant's request for a continuance.

Moreover, Defendant has not shown any prejudice resulting from the Court's denial of the continuance request. Defendant has not shown what additional cross-examination could have been conducted if defense counsel had

11

been given more time to prepare. *See, e.g., United States v. Gonzalez-Rincon*, 36 F.3d 859, 865-66 (9th Cir. 1994) ("'To reverse a trial court's denial of a continuance, an appellant must show that the denial prejudiced [her] defense.' She must also set forth the substance of the witness testimony she could have obtained if given more time.") (citation omitted). Here, defense counsel actually cross-examined each of the customer witnesses including Guzman, who was cross-examined and then re-cross-examined.

In sum, Defendant has failed to establish that this is the exceptional case where the Court should exercise its discretion to overturn the jury's verdict and order a new trial based upon the denial of her request for a continuance. Accordingly, Defendant's request for a new trial on this ground is denied.

### 3. Exclusion of Expert Witness

Defendant argues that a new trial should be granted because her expert psychologist was erroneously excluded. "In order to secure a new trial based on an allegedly improper evidentiary ruling, a defendant must show that the evidentiary rulings were both clearly erroneous and so prejudicial that 'it can be reasonably concluded that with or without such evidence, there would have been a contrary result.'" *United States v. Executive Recycling, Inc.*, 946 F. Supp. 2d 1130, 1138 (D. Colo. 2013) (quoting *Hinds v. General Motors Corp.*, 988 F.2d 1039, 1049 (10th Cir. 1993)). *See also Goodson v. Arizona Dep't of Corr.*, 892 F.2d 1046 (9th Cir. 1989) ("The improper exclusion of evidence is a ground for new trial only if it is prejudicial.") The Court's ruling was not clearly erroneous.

Before trial, the Government moved to exclude Defendant's proffered expert psychological witness, Vianne Castellano, Ph.D., on the ground that her proffered testimony ran afoul of Federal Rule of Evidence 704(b) ("Rule 704(b)"). (Doc. 42.) In her report, Dr. Castellano opined that Defendant could not have formed fraudulent intent, an ultimate issue for the jury. The Ninth Circuit has interpreted

1  Rule 704(b) to "prohibit[] testimony 'from which it necessarily follows, if the
2  testimony is credited, that the defendant did or did not possess the requisite *mens*
3  *rea*.'"  *United States v. Dela Cruz*, 358 F.3d 623, 626 (9th Cir. 2004) (quoting
4  *United States v. Morales*, 108 F.3d 1031, 1037 (9th Cir. 1997)).

5       At oral argument, defense counsel appeared to concede that the proffered
6  testimony regarding Defendant's mental state would have violated Rule 704.  *See*
7  Tr. at 233-234 ("I would recognize at this point that there's a 704 problem with
8  that, that probably precludes any need for a discussion. So I think that on that
9  particular point, we're probably in agreement, so we can possibly move on from
10 there.").  However, defense counsel objected to the exclusion of Dr. Castellano's
11 entire report.  *See id.* at 234.  Defendant has resurrected that objection in the instant
12 motion.

> Here, by completely excluding the psychologist's testimony, [Defendant] was deprived of the opportunity to present evidence of her learning disability and mental disorder that would have helped the jury understand why she believed that the IRS belonged to England. . . .  Such evidence would have helped [the] jury understand that it was not likely that [Defendant], if she signed "self prepared," had any idea as to why or that it was a false, fictitious or fraudulent statement.

20 Def. Mem. at 2.
21      The issue at trial was not whether Defendant knew that it was illegal to file
22 false tax returns; it was whether she knew that the tax returns claiming tax refunds
23 contained false information.  Thus, Dr. Castellano's diagnoses leading to her
24 ultimate conclusion regarding Defendant's fraudulent intent were irrelevant to the
25 elements of the charges.  Accordingly, Dr. Castellano's testimony was properly
26 excluded in its entirety.  *See* Tr. at 235.  The proper exclusion of irrelevant

13

evidence does not constitute the type of extraordinary circumstance that would warrant a new trial.  Defendant's request for a new trial based upon the exclusion of expert testimony is therefore denied.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's Motion for Judgment of Acquittal or, in the Alternative, for a New Trial is DENIED.  Defendant will be sentenced as scheduled, on May 8, 2014, at 10:30 a.m.

Dated:  April 21, 2014

**SO ORDERED:**

_____
JOSEPHINE L. STATON

Honorable Josephine L. Staton
United States District Judge